Kevin L. McCARTY, Appellant–
Petitioner,

v.

STATE of Indiana, Appellee–
Respondent.

No. 49A04–0306–PC–296.

Court of Appeals of Indiana.

Feb. 4, 2004.

Transfer Denied April 27, 2004.

Susan K. Carpenter, Public Defender of Indiana, Lisa Malmer Johnson, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

MAY, Judge.

Kevin McCarty entered a plea of guilty to two counts of child molestation as Class A felonies.[1] He sought post-conviction relief and his petition was denied. McCarty raises a single issue on appeal, which we restate as whether McCarty was denied effective assistance of counsel when his counsel failed at sentencing to offer evidence of McCarty's mental impairment and other potential mitigating circumstances. We reverse.[2]

**FACTS**

McCarty was charged with four counts of child molesting, two as Class A felonies and two as Class C felonies. Counsel was appointed to represent McCarty, and McCarty eventually agreed to plead guilty to the two Class A felonies. The plea

[1] Ind.Code § 35–42–4–3.

[2] We heard oral argument on October 28, 2003, at the University of Southern Indiana in Evansville. We thank the school for its hospitality and commend counsel for the quality of their appellate advocacy.

agreement provided for a maximum executed sentence of forty years. After a sentencing hearing, the trial court imposed a sentence of forty years on each count, with the sentences to be served concurrently.

McCarty's counsel did not raise as mitigating circumstances at the sentencing hearing that McCarty was mentally retarded, had himself been molested, and had a troubled family background. McCarty sought post-conviction relief, asserting his trial counsel was ineffective for failing to investigate or raise those potential mitigators.

McCarty presented testimony at his post-conviction hearing from a professor of psychological science and developmental psychology that McCarty had been in special education classes and that his IQ was between 68 and 70.[3] When he was twenty years old, tests revealed McCarty was functioning at a ten-to-thirteen-year-old level.[4] The psychologist testified that mentally retarded people tend to exercise poor judgment and have difficulty controlling their anger and other impulses because they sometimes do not learn from their experiences.

Trial counsel met with McCarty only once before the guilty plea hearing. He testified that based on his interaction with McCarty, McCarty did not appear mentally disabled. Counsel therefore did not pursue an investigation of McCarty's mental status. Counsel did not recall whether he had read McCarty's lengthy confession, which included McCarty's statement that he had been molested. He did not recall whether he reviewed McCarty's court file or whether he had received a call from McCarty's sister about McCarty's family background. Counsel did not secure the services of an investigator or a mental health professional nor did he try to obtain McCarty's school or mental health records. He did not recall whether he and McCarty discussed McCarty's family history and background or whether McCarty had offered him any direction in terms of presenting evidence at the sentencing hearing.

## DISCUSSION AND DECISION

### Standard of Review

■ Post-conviction proceedings are not "super appeals" through which convicted persons can raise issues they failed to raise at trial or on direct appeal. Rather, they afford petitioners a limited opportunity to raise issues that were unavailable or unknown at trial and on direct appeal. *Bahm v. State*, 789 N.E.2d 50, 57 (Ind.Ct. App.2003), *aff'd on reh'g* 794 N.E.2d 444 (Ind.Ct.App.2003). Post-conviction proceedings are civil in nature, and petitioners bear the burden of proving their grounds for relief by a preponderance of the evidence. *Id.* When a petitioner appeals the denial of post-conviction relief, he appeals from a negative judgment; consequently, we may not reverse the post-conviction court's judgment unless the petitioner demonstrates the evidence, as a whole, leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court. *Id.* We accept the post-conviction court's findings of fact unless

---

**3.** "An IQ of 100 is considered average. To be diagnosed as mentally retarded, a person must have an IQ significantly below average, below 70 to 75. If a person scores below 70 on a properly administered and scored IQ test, he or she is in the bottom 2 percent of the American population." Andrea D. Lyon, *Cruel and Unusual*, Illinois Issues (June 2002), *available at* http://illinoisissues.uis.edu/features/2002june/retarded.html.

**4.** Thus, McCarty notes, at the time of the offenses his "intellectual and emotional age was approximately equivalent to that of his victims." (Br. of Petitioner–Appellant at 22.)

they are clearly erroneous, but we do not have to give deference to the post-conviction court's conclusions of law. *Id.* On appeal, we may not reweigh the evidence or reassess the credibility of the witnesses. *Id.*

To prevail with an ineffective assistance of counsel claim, a defendant must show counsel's performance was so deficient that he was not functioning as the "counsel" guaranteed by the Sixth Amendment and that this deficient performance prejudiced the defendant. *Games v. State,* 684 N.E.2d 466, 468 (Ind.1997), *modified on reh'g on other grounds* 690 N.E.2d 211 (Ind.1997). The petitioner must demonstrate both deficient performance and resulting prejudice. *Ben–Yisrayl v. State,* 729 N.E.2d 102, 106 (Ind.2000), *reh'g denied, cert. denied* 534 U.S. 830, 122 S.Ct. 73, 151 L.Ed.2d 38 (2001). A deficient performance is that which falls below an objective standard of reasonableness. Counsel's performance is presumed effective, and a petitioner must offer strong and convincing evidence to overcome this presumption. *Id.*

Prejudice exists when "there is a reasonable probability that the result of the proceeding would have been different but for defense counsel's inadequate representation." *Id.* "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Games,* 684 N.E.2d at 468 (quoting *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *reh'g denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984)). If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed. *Id.*

### Deficient Performance

■ We believe counsel's performance was deficient because he failed to present as mitigators four circumstances McCarty asserts should have been before the court: 1) McCarty's mental disability, 2) McCarty's own molestation as a child, 3) the likelihood he could be successfully rehabilitated, and 4) the fact his confession went beyond what the victims had reported.[5]

The requirement that a sentencing court consider and articulate certain factors in imposing a particular sentence applies to at least some sentences imposed after a guilty plea. *See Abercrombie v. State,* 275 Ind. 407, 411, 417 N.E.2d 316, 318 (1981). There, our supreme court remanded for a new sentencing hearing and sufficient findings to support the sentence imposed because there was "no statement of reasons or of specific aggravating and mitigating circumstances which would support the imposition of a one hundred-year sentence" for Abercrombie's four felony convictions. *Id.* at 414, 417 N.E.2d at 320.

The court there noted a number of mitigating circumstances that the sentencing court should have examined:

> Some of the mitigating factors in this case were that there was no death, no permanent physical impairment, no destruction of property, no weapons involved and no evidence of deliberation. Beyond the actual facts of the crime itself, the nature and background of the individual defendant should also be considered. Here, defendant's prior criminal record was not extensive and involved no crimes of violence. The defendant showed remorse for the in-

---

**5.** McCarty's counsel placed before the court four mitigating factors: McCarty's age, his admission of guilt and acceptance of responsibility, his lack of significant criminal history, and his apology to his family as expressed in a letter his sister wrote.

stant crime and agreed to plead guilty and spare the victim the ordeal of a trial. Defendant was holding a steady job and had the support of a good family in the community. The unique and unplanned circumstances surrounding the incident tend to show that the crime would not be likely to happen again. Several members of defendant's family wrote to the judge showing their concern for and support of defendant. *Id.* at 414, 417 N.E.2d at 319.

■ McCarty asserts ineffectiveness in counsel's "complete lack of preparation for the sentencing hearing," (Br. of Petitioner–Appellant at 16), which lack of preparation caused counsel to overlook [6] the additional mitigators McCarty urges. "In determining an appropriate sentence, all circumstances of the particular crime and the background of the individual offender should be considered ... [t]his individualized sentencing process requires possession of the fullest information possible concerning the defendant's life and characteristics." *Thomas v. State*, 562 N.E.2d 43, 47 (Ind.Ct.App.1990).

We note initially that counsel met with McCarty only once. McCarty does not contend this constitutes deficient performance *per se*, but it seems obvious that evidence of only a single meeting between counsel and client in a multiple-felony case would alert a reviewing court to the possibility of inadequate representation. We acknowledge that McCarty had confessed to the charged crimes,[7] and counsel was likely burdened by the relentless demands invariably faced by public defenders. However, these circumstances do not excuse a perfunctory investigation of McCarty's background for sentencing purposes. Had counsel spent more time with McCarty in preparing for the guilty plea and sentencing hearings, he might well have observed manifestations of his client's mental retardation and sought more detailed information regarding his family history, sexual victimization as a teenager, and potential for successful rehabilitation.

### 1. *McCarty's Mental Disability*

McCarty's counsel violated prevailing professional norms when he failed to interview McCarty's family members, review the court file, obtain McCarty's educational and mental health records, or consult with a mental health professional. In *Prowell v. State*, 741 N.E.2d 704, 714 (Ind. 2001), our supreme court found Prowell's counsel ineffective for failing to pursue available leads regarding mitigating evidence. The State notes counsel's testimony that in his interaction with McCarty, McCarty appeared free of disability. Because counsel was unaware of any disability, the State asserts he could not be found

---

**6.** The State appears to characterize counsel's failure to mention the mitigating circumstances urged by McCarty as a deliberate "choice" made for "strategic or tactical reasons," (Br. of Appellee at 6), which choices generally do not demonstrate ineffective assistance of counsel. *See, e.g., State v. Miller*, 771 N.E.2d 1284, 1288 (Ind.Ct.App.2002), *reh'g denied, trans. denied* 792 N.E.2d 37 (Ind. 2003). The State does not explain how that characterization can be reconciled with counsel's apparent lack of knowledge that many of those mitigating factors existed in McCarty's case.

**7.** We are particularly troubled that McCarty's trial counsel failed to notice that the prosecutor at the guilty plea hearing recited only the facts establishing the two Class C felony child molesting counts, not the two Class A felony counts to which McCarty entered guilty pleas. (*Compare* Tr. of Guilty Plea Hearing at 12–13 *with* Appellant's App. at 29–30 (charging information)). McCarty's postconviction counsel also failed to mention this glaring oversight. The Class C felony counts were dismissed pursuant to the agreement.

ineffective for failing to present the disability as a mitigating circumstance.[8]

However, McCarty notes "red flags" (Br. of Petitioner–Appellant at 19) that should have put counsel on notice McCarty was mentally impaired. These include a letter McCarty wrote to the court that exhibits extremely poor grammar, spelling and punctuation,[9] and a report by the Hamilton Center that was referred to, but not included with, the presentence report. The Hamilton Center report indicated McCarty's cognitive functioning was at a low level.

### 2. *McCarty's Upbringing*

The State asserts McCarty's counsel was unaware of facts about McCarty's life that would have warranted investigation because McCarty had reported in interviews for his presentence report that his home life was stable. Again, McCarty directs us to "red flags" that should have warranted investigation by counsel. In the letter to the court referred to above as an indicator of McCarty's mental disability, McCarty wrote he had been "messed with when i was younger mine started when i was 15teen and didn't stop till i was 17teen[.]" (App. at 56.) McCarty's counsel did not recall whether he read the transcript of McCarty's confession, but testified he routinely does so. That transcript indicated McCarty had been molested as an adolescent. The presentence report referred to one incident of molestation when McCarty was fifteen.

Counsel should also have brought to the court's attention McCarty's "seriously troubled" family background. (Br. of Petitioner–Appellant at 24.) McCarty elicited testimony at the post-conviction hearing that a mentally retarded molestation victim from a dysfunctional family is particularly prone as an adult to "acting out behavior" in the form of child molestation. (*Id.*) The post-conviction court noted evidence of a difficult childhood warrants little, if any, mitigating weight, citing *Coleman v. State*, 741 N.E.2d 697, 700 (Ind. 2000), *reh'g denied, cert. denied* 534 U.S. 1057, 122 S.Ct. 649, 151 L.Ed.2d 566 (2001). However, the *Coleman* court went on to say:

> Nonetheless, it is certainly true that 'evidence about the defendant's background and character is relevant because of the belief, long held by this society, that defendants who commit criminal acts that are attributable to a disadvantaged background, or to emotional and mental problems, may be less culpable than defendants who have no such excuse.'

**8.** The State cites *Prowell* as authority for this assertion. There, counsel was found ineffective for failing to adequately investigate Prowell's mental illness. Counsel suspected Prowell had a serious mental illness but did not consider seeking a guilty but mentally ill plea agreement. "This step is certainly not necessary to effective counsel in every case. Here, however, there were obvious indications that Prowell's case did present substantial issues turning on the development of this evidence." 741 N.E.2d at 714.

**9.** While the punctuation, grammar, and capitalization in this letter are indeed "extremely poor," as McCarty suggests, we decline to hold that such shortcomings necessarily indicate retardation. Nevertheless, the letter should have prompted counsel to investigate McCarty's allegations of adolescent sexual abuse and the possibility that he suffered from a learning disability or mental deficit.

We also take issue with McCarty's characterization of his mental retardation and "severely disadvantaged background" as "directly linked" to his offenses (Br. of Petitioner–Appellant at 21, 25). A person with these attributes might be considered more likely than another to engage in criminal activity, but to assert a definitive correlation between these attributes and criminality is to paint with much too broad a brush.

*Id.* (quoting *California v. Brown,* 479 U.S. 538, 545, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987) (O'Connor, J., concurring)).

### 3. *Other Mitigating Factors*

McCarty offered evidence at the post-conviction hearing that he would likely respond well to treatment in that he can learn to better control his behavior and exercise better judgment; that the victims did not sustain physical injury;[10] and that he has accepted responsibility for his crimes and is remorseful. *See Cloum v. State,* 779 N.E.2d 84, 90 (Ind.Ct.App.2002) (concluding the trial court abused its discretion in not assigning mitigating weight to Cloum's decision to plead guilty when the guilty plea substantially benefited the State and Cloum presented positive character evidence indicating the plea truly represented remorse and an acceptance of responsibility).

### *Prejudice*

■ The post-conviction court determined McCarty was not prejudiced by his counsel's performance because none of the

information counsel could have presented "rises to the level of mitigation that would offset the three aggravating factors"[11] the trial court found in sentencing McCarty. (App. at 188.) It noted "evidence of a difficult childhood warrants little, if any, mitigating weight." *Id.* (quoting *Coleman,* 741 N.E.2d at 700). The post-conviction court found McCarty's mental condition was not a mitigator because it was obvious from various statements McCarty had made that he understood his conduct was criminal.[12] Finally, the post-conviction court noted McCarty's presentence report included information about McCarty's own molestation; the trial court therefore presumably was aware of that information.

■ Sentencing lies within the discretion of the trial court. *Thacker v. State,* 709 N.E.2d 3, 9 (Ind.1999), *reh'g denied.* If a trial court uses aggravating or mitigating circumstances to enhance the presumptive sentence, it must (1) identify all significant mitigating and aggravating circumstances; (2) state the specific reason why each circumstance is determined

---

10. McCarty cites *Walker v. State,* 747 N.E.2d 536, 538 (Ind.2001) as support for his statement that "[t]he absence of physical injury has been recognized as a mitigating circumstance in child molestation cases." (Br. of Petitioner–Appellant at 27.) *Walker* supports that premise only indirectly. The *Walker* court noted there was no physical injury, but did not explicitly state that was a mitigating factor. Rather, it said "[a]lthough the absence of physical injury does not bar an enhanced sentence, this is some distance from being the worst offense or the most culpable offender." 747 N.E.2d at 538.

11. The court found as aggravating factors that McCarty had a criminal history, prior attempts to rehabilitate him had been unsuccessful, and there were two victims.

12. We are concerned that this statement suggests the trial court might not have distinguished between the legal standard for an insanity defense, i.e., that as a result of mental

disease or defect, McCarty was "unable to appreciate the wrongfulness of the conduct at the time of the offense," Ind.Code § 35–41–3–6(a), and the legal standard for determining whether a mental disability is a mitigating circumstance. McCarty did not raise an insanity defense.

Our supreme court has held a mental condition may be a mitigating circumstance even if it does not amount to a defense to a crime. *See, e.g., Gambill v. State,* 675 N.E.2d 668, 678 (Ind.1996), *reh'g denied.* There, the court noted the Indiana Constitution requires that a sentence be proportional to both the nature of the offense and the character of the offender. There was overwhelming evidence Gambill was gravely mentally ill when she committed the crime and she was diagnosed with paranoid schizophrenia. The court found her mental illness, "while not a defense to the crime, is of substantial mitigating value … [b]ecause of the special circumstances of this case, the Appellant is unlikely to commit another crime of this nature." *Id.*

to be mitigating or aggravating; and (3) articulate the court's evaluation and balancing of the circumstances. *Id.* The trial court is not required to find the presence of mitigating circumstances. *Fugate v. State,* 608 N.E.2d 1370, 1374 (Ind.1993). When a defendant offers evidence of mitigators, the trial court has the discretion to determine whether the factors are mitigating, and it is not required to explain why it does not find the proffered factors to be mitigating. *Taylor v. State,* 681 N.E.2d 1105, 1112 (Ind.1997). The trial court's assessment of the proper weight of mitigating and aggravating circumstances and the appropriateness of the sentence as a whole are entitled to great deference and will be set aside only upon a showing of a manifest abuse of discretion. *Thacker,* 709 N.E.2d at 10.

The State's entire argument that McCarty was not prejudiced by his counsel's performance is premised on the general rule that the trial court has discretion to disregard or reject mitigating circumstances urged by a defendant, *Bocko v. State,* 769 N.E.2d 658, 667 (Ind.Ct.App. 2002), *reh'g denied, trans. denied* 783 N.E.2d 702 (Ind.2002), and is not obliged to give a mitigating circumstance the same weight or credit as would the defendant. *Abel v. State,* 773 N.E.2d 276, 280 (Ind. 2002). Therefore, the State asserts, McCarty could not show prejudice in the form of a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

However, the prejudice McCarty suffered arose not because the court declined to *recognize* the mitigators but because the mitigating circumstances were not placed before the court at all; the court was therefore unable to even consider them. McCarty was prejudiced by trial counsel's failure to investigate and present the available mitigation evidence because it deprived the sentencing court of the information it needed to make an informed decision and left the court little to balance against the aggravating circumstances.

The dispositive question in determining whether a defendant is prejudiced by counsel's failure at sentencing to present mitigating evidence is what effect the totality of the omitted mitigation evidence would have had on the sentence. *Coleman,* 741 N.E.2d at 702. The totality of that evidence in the case before us includes evidence of McCarty's mental disability, his troubled upbringing, his potential for successful rehabilitation, his remorse and acceptance of responsibility, and the fact the victims did not suffer physical injury. We turn now to the possible mitigating weight of each of these facts.

### 1. *McCarty's Mental Disability*

McCarty was prejudiced by counsel's failure to bring to the court's attention McCarty's mental disability. Our supreme court has indicated that, at least in some circumstances, mental retardation must be given weight as a mitigator. In *Young v. State,* 696 N.E.2d 386, 391 (Ind.1998), Young argued his 195–year sentence was manifestly unreasonable because the trial court failed to consider as a mitigating factor his mental disabilities. The trial court recorded no mitigating factors, but our supreme court noted the record clearly indicated Young "functions with the mental capacity of a child." *Id.* The trial court had determined during a pre-trial conference that Young was mentally retarded and therefore could not be sentenced to life without parole under Ind.Code § 35–

50-2-9 (1998).[13] "By sentencing Young to 195 years, however, the court virtually imposed life without parole anyway." *Id.* at 392. The court accordingly found Young's sentence to be manifestly unreasonable because that mitigator was given no weight. *Id. And see Atkins v. Virginia,* 536 U.S. 304, 306, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002) (because of their disabilities in areas of reasoning, judgment, and control of their impulses, mentally retarded persons "do not act with the level of moral culpability that characterizes the most serious adult criminal conduct").

### 2. *The Other Mitigators*

McCarty was also prejudiced because the court was unable to consider other potentially mitigating evidence. An adequate investigation by counsel, he notes, would have revealed the troubled family history, which caused psychological damage "directly linked to McCarty's offenses." (Br. of Petitioner–Appellant at 24.) As post-conviction testimony indicated, adequate investigation and evaluation by a mental health professional would have revealed McCarty "stands a good chance of being successfully rehabilitated." (*Id.* at 26.) While counsel noted at sentencing that McCarty had confessed, he did not mention that the confession went beyond what the victims had reported. McCarty notes the victims' statements alone would have supported only the Class C charges and not the Class A charges to which McCarty agreed to plead guilty.

Appellate courts are—and should be—reluctant to second-guess the decisions that trial counsel must make in representing clients, as well as the decisions that trial courts must make in sentencing criminal defendants. This reluctance is perhaps even greater in the case of a guilty plea, with its emphasis on finality and expediency, provided that the defendant has knowingly, voluntarily, and intelligently waived his rights.

Assuming, as we have determined here, that trial counsel performed deficiently in failing to investigate potential mitigating circumstances, we must make the difficult determination whether there is a reasonable probability the result of the sentencing proceeding would have been different but for counsel's inadequate representation. Much of this difficulty is due to Indiana's sentencing scheme, which provides for relatively wide ranges of punishment in the most serious felony classes[14] and properly vests trial courts with substantial discretion in considering aggravating and mitigating circumstances and in determining punishments appropriate in light of the nature of the offense and the character of the offender.[15] Given the subjectivity inherent in the sentencing process, a reviewing court is hard pressed to conclude there is a reasonable probability that the trial court would have imposed a lesser sentence had it been presented with additional mitigating evidence that trial counsel should have brought to light.

---

**13.** That section provides the State may seek either a death sentence or a sentence of life imprisonment without parole for murder by alleging, on a page separate from the rest of the charging instrument, the existence of at least one aggravating circumstance listed elsewhere in that section. "However, the state may not proceed against a defendant under this section if a court determines at a pretrial hearing under IC 35–36–9 that the defendant is a mentally retarded individual."

**14.** *Compare* Ind.Code § 35–50–2–4 (thirty-year range for Class A felony) *and* Ind.Code § 35–50–2–5 (fourteen-year range for Class B felony) *with* Ind.Code § 35–50–2–6 (six-year range for Class C felony) *and* Ind.Code § 35–50–2–7 (two-and-one-half-year range for Class D felony).

**15.** *See* Ind. Appellate Rule 7(B).

McCarty characterizes his forty-year sentence for two Class A felonies as "significantly aggravated," noting that it is "only ten years below the maximum" of fifty years. (Br. of Petitioner–Appellant at 31.) Viewed another way, however, his sentence is only ten years *above* the presumptive of thirty years. In any event, we reluctantly conclude there is a reasonable probability the trial court would have imposed a lesser sentence had it been fully informed of McCarty's mental retardation and traumatic background. Given the demonstrated unwillingness of the trial and post-conviction court to reconsider McCarty's sentence in light of this information, we exercise our appellate jurisdiction under Article 7, Section 6 of the Indiana Constitution and revise McCarty's sentence to the presumptive term of thirty years.

## CONCLUSION

Counsel's failure to investigate and present to the court numerous potentially mitigating circumstances constituted deficient performance, and there is a reasonable probability the result of the sentencing proceeding would have been different had defense counsel presented those mitigating circumstances to the court for its consideration. We accordingly reverse the denial of McCarty's petition for post-conviction relief and revise McCarty's sentence.

BROOK, C.J., and DARDEN, J., concur.