**STATE of Indiana, Appellant–Respondent,**

v.

**George METCALF, Appellee–Petitioner.**

No. 45A03–0512–PC–592.

Court of Appeals of Indiana.

Aug. 15, 2006.

Transfer Denied Oct. 26, 2006.

Steve Carter, Attorney General of Indiana, David A. Arthur, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Susan K. Carpenter, Public Defender of Indiana, Cassandra J. Wright, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Judge.

Appellant-respondent State of Indiana appeals from the post-conviction court's decision to grant relief in favor of appellee-petitioner George Metcalf. Specifically, the State claims that the post-conviction court erred in determining that Metcalf no longer had to serve a life sentence that had been imposed in 1977, following the Indiana Parole Board's (Parole Board) decision in 1999 to grant Metcalf a "turnover" [1] or discharge from serving that sen-

---

1. We noted in *Meeker v. Indiana Parole Board,* 794 N.E.2d 1105, 1109 (Ind.Ct.App.2003),

tence. Put another way, the State urges that the post-conviction court erroneously concluded that Metcalf's originally-imposed life sentence could not serve as a basis for any future parole revocation. Concluding that the post-conviction court erroneously determined that Metcalf had been discharged from serving his originally-imposed life sentence, we reverse the grant of post-conviction relief.

### FACTS [2]

On March 22, 1977, Metcalf was sentenced to life in prison by the Lake Superior Court, Criminal Division, following his conviction for the crime of inflicting injury in the perpetration of attempted robbery. Metcalf's conviction and sentence were upheld following both a direct appeal and an appeal following post-conviction proceedings. Thereafter, on October 25, 1991, Metcalf was granted parole by the Parole Board and released from the Department of Correction (DOC).

On October 21, 1998, Metcalf was sentenced to two years of incarceration following his conviction for theft in the St. Joseph Superior Court. The sentence was ordered to run consecutively to the attempted robbery offense. Thereafter, on December 18, 1998, Metcalf's parole was revoked because of his theft conviction and other parole rule violations. The trial court ordered Metcalf to serve the balance of the time on the life sentence.

On July 30, 1999, the Parole Board granted Metcalf a turnover to serve the sentence on the theft conviction, and a form issued by the Parole Board included the phrase "preserve life sentence." Appellant's App. p. 60. Specifically, the Parole Board's voting sheet reflects that Metcalf was granted a "turnover," and the phrase "will go back on life sentence; substance abuse evaluation" was included in the "comments" section on the document. Id. at 59.

On August 3, 1999, Metcalf's Report of Classification Hearing document showed that he was "turned over," and a new release date of May 23, 2000, was set. Id. at 9. Thereafter, on February 23, 2000, Metcalf was released on parole on the life sentence after serving the sentence for theft. However, on June 19, 2001, Metcalf's parole was revoked because of a positive urine drug screen for marijuana and a conviction for battery in Lake Superior Court 2. While Metcalf was again released on parole on the life sentence on March 2, 2002, his parole was again revoked on September 14, 2004, for failing to report to his parole agent, failing to advise of an address change, and a positive drug screen.

On January 27, 2005, Metcalf filed a successive petition for post-conviction relief, claiming that his parole was improperly revoked in 2004 because he had not been on parole at that time. In effect, Metcalf maintained that he had been effectively discharged from parole in 1999 when the Parole Board granted a "turn over" to serve the sentence for theft while he was on parole.

Following a hearing, the post-conviction court determined that Metcalf's life sentence was effectively discharged "when he was 'turned over' by the Indiana Parole Board to serve a subsequent two-year theft sentence. Thus, his life sentence could not be the basis of a later parole revocation." Appellant's App. p. 10. Re-

---

that "there is no statutory authority or case law definition of 'turn over.'" This term will be more fully discussed below.

2. We heard oral argument on June 22, 2006, in Indianapolis. We commend counsel for their able presentations.

lying on this court's holding in *Meeker v. Indiana Parole Board*, 794 N.E.2d 1105 (Ind.Ct.App.2003), the post-conviction court noted that the Parole Board decided to turn Metcalf over to his new commitment to serve the new sentence and that he had been released on parole after serving the theft sentence. Specifically, the post-conviction court outlined the circumstances in *Meeker* as follows, and determined that:

2. In *Meeker*, the Court of Appeals held that the Parole Board could not effectively suspend the parole on one set of sentences until after serving the sentences on another unrelated conviction. Meeker was ordered to serve two dealing convictions concurrently in 1991 and was later released on parole in 1995. Meeker's parole was later revoked after he was convicted of several alcohol related offenses in 1996. Meeker was ordered to serve the balance of the two 1991 dealing sentences. The Parole Board subsequently decided Meeker should be "turned over" to serve the sentences on the alcohol related offenses in 1998. Meeker was again released on parole in 2000, and the 1991 convictions were used as the basis of his parole. In 2001, the Parole Board again revoked Meeker's parole and reinstated the remaining sentences on the 1991 dealing convictions. The Court of Appeals decided that Meeker's turnover was a discharge from his dealing sentence, and he could not again be required to serve the remainder of the dealing sentence at some later date.

Identical to Meeker, Metcalf was granted parole by the Parole Board. After several years of being on parole, Metcalf violated his parole and his parole was revoked because he was convicted of another crime. Metcalf was assessed the balance of his time. Like Meeker, the Parole Board decided to turn Metcalf over to his new commitment to serve the new sentence. Metcalf was released on parole after serving the theft sentence. The life sentence was used as the basis for his parole. Metcalf again violated his parole. Once the Parole Board turned over Metcalf's life sentence in order to serve the new sentence, Metcalf's life sentence was discharged. The Parole Board cannot hold one sentence in abeyance until after serving the sentence on another conviction. The Parole Board in Metcalf's case has tried to explicitly do what the Court of Appeals in *Meeker* said the Parole Board could not do.

Further, Metcalf has the same parole revocation from when his parole was revoked in 1998, due to the St. Joseph theft conviction, as in *Meeker*. Metcalf's form contains the same language discussed in *Meeker*. The form states that Metcalf would be assessed the balance of his sentence and that his new commitment on the theft charge would be held in abeyance until the end of his commitment or until the Parole Board turned him over to his new commitment. The Court of Appeals in *Meeker* decided that this same language supported the conclusion that when the Parole Board "turned over" Meeker to begin serving the unrelated sentences, it effectively discharged him from the remainder of the other sentence. *Id.* at 1109. Once the Parole Board turned Metcalf over, like *Meeker*, Metcalf's sentence was also discharged.

3. This Court concludes that Metcalf's life sentence was turned over on July 30, 1999, and the Parole Board effectively discharged the life sentence. The life sentence could no longer be a basis for parole revocation.

Appellant's App. p. 10–12. The State now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

We initially observe that the facts of this case are undisputed. Thus, as Our Supreme Court has determined: "an issue presented on appeal is a pure question of law when the question does not require reference to extrinsic evidence, inferences drawn from that evidence, or the consideration of credibility questions." *Bader v. Johnson*, 732 N.E.2d 1212, 1216 (Ind.2000). We review purely legal issues de novo. *Cunningham v. State*, 835 N.E.2d 1075, 1076 (Ind.Ct.App.2005), *trans. denied.* This is such a question, and we review the claim de novo. In doing so, we give no deference to a trial court's legal conclusions. *Id.*

### II. Meeker and Its Application

The parties agree that the central focus in this case involves the post-conviction court's analysis and application of this court's decision in *Meeker.* The State argues that the post-conviction court improperly applied the rationale of *Meeker* in determining that the Parole Board had effectively discharged Metcalf from serving his life sentence after the Parole Board voted to "turn over" Metcalf's life sentence to a new commitment. Hence, the State maintains that the post-conviction court erred in concluding that Metcalf's originally-imposed life sentence could not be used as the basis for any future parole revocation. On the other hand, Metcalf argues that once the Parole Board "turned over" his life sentence in order to serve the new sentence, "the life sentence was discharged and could not be the basis of his parole." Appellee's Br. p. 6. In essence, Metcalf argues that the Parole Board's vote for a "turn over" discharged the earlier sentence as a matter of law.

In addressing the parties' contentions, we initially expand on the circumstances that occurred in *Meeker.* In that case, the defendant was serving two concurrent sentences following his convictions for drug dealing in 1991. Thereafter, Meeker was released to parole in 1995. *Meeker,* 794 N.E.2d at 1106. While on parole, Meeker was convicted of several alcohol-related crimes in 1996 and was sentenced to serve the remainder of his 1991 sentence for dealing. While Meeker was incarcerated on the 1991 drug sentence, the Parole Board voted that "Meeker should be 'turned over' to another commitment" on July 21, 1998. *Id.* at 1107. On October 12, 2000, Meeker was released to parole after serving the five-year sentence less the amount of credit time that he had earned. The dealing convictions were used as the basis for Meeker's parole. After Meeker was convicted of carrying a firearm without a license in October 2001, his parole was revoked the following month. As a result, the Parole Board reinstated the remaining sentence on the 1991 drug dealing convictions.

Meeker ultimately appealed, and this court determined that the "turn over" by the Parole Board amounted to a discharge from his dealing sentence and that Meeker could not again be required to serve the remainder of his dealing sentence at a later date. *Id.* at 1109. Specifically, we observed that:

> When the parole board "turned over" Meeker to begin serving the alcohol related sentences, it effectively discharged him from the remainder of the dealing convictions. There is no statutory authority or case law definition of "turn over" and we conclude that we must construe the phrase against the State. During the 1998 review, the parole board could have refused to "turn over" Meeker's sentence, as it had done in 1997, until he served the remainder of his fixed term. The parole board did

not do so, and the State provides no support for its contention that Meeker could again be required to serve the remainder of his dealing sentence at some later time.

*Id.* at 1194.

In considering this holding, the State maintains that *Meeker* does not stand for the proposition that the Parole Board is precluded from placing a defendant on parole status on the crime for which parole is revoked, or that a prisoner cannot be on parole status on one crime while serving the prison term for a second consecutive sentence. Appellant's Br. p. 9. Thus, relevant to our discussion here are this court's opinions in *Hannis v. Deuth*, 816 N.E.2d 872 (Ind.Ct.App.2004), and *Parker v. State*, 822 N.E.2d 285 (Ind.Ct.App.2005).

In each of those cases, the prisoner served consecutive sentences and parole was revoked on the sentence that was served first in prison. Citing *Meeker*, each of the defendants claimed that when he was moved from the first sentence to the second sentence, a discharge had occurred, and the revocation of parole based on the first sentence was improper. In both *Parker* and *Hannis*, it was determined that going from one sentence to another did not effectively discharge the first. Moreover, it was not established in either case that the prisoners were actually "turned over" by the Parole Board, unlike the circumstances in *Meeker*. *See Parker*, 822 N.E.2d at 287; *Hannis*, 816 N.E.2d at 879. Additionally, this court in *Mills v. State*, 840 N.E.2d 354 (Ind.Ct.App. 2006)—which was obviously not available to the post-conviction court in Metcalf's case—also distinguished that case from *Meeker* because there was no evidence that the Parole Board took any action to discharge or "turn over" Mills's sentence. *Id.* at 358. Therefore, Metcalf seeks to distinguish the circumstances here from those in *Parker, Hannis* and *Mills*, arguing that the post-conviction court properly applied the holding in *Meeker* because the language in the Parole Board's order indicated that he was actually "turned over." Appellee's Br. p. 9–11.

Notwithstanding Metcalf's claims, we note that Indiana Code section 11–13–3–5(a)(3) [3] provides that parole on a life sentence is for life unless a discharge is granted. In our view, the rule set forth in *Meeker* does not mean that a "turn over" will always effect a discharge. Specifically, the State urges, and we agree, that only when there is no other evidence of the Parole Board's intent will the courts construe a vote to "turn over" as a vote to discharge. That said, it is interesting to

---

**3.** Indiana Code section 11–13–3–5 provides that

(a) The period of parole for offenders sentenced for offenses under laws other than IC 35–50 is as follows:

(1) A person released on parole from an indeterminate term of imprisonment remains on parole until the expiration date of his term of imprisonment, except that the parole board may discharge him from that term any time after his release on parole.

(2) A person released on parole from a determinate term of imprisonment remains on parole until his determinate term expires, except that the parole board may discharge him from that term any time after his release on parole.

(3) A person released on parole from a term of life imprisonment remains on parole for life, except that the parole board may discharge him at any time after his release on parole.

(b) When parole is terminated by discharge, the parole board shall enter an order discharging the person from parole and term of imprisonment. A copy of the order shall be given to the discharged person and a copy shall be forwarded to the clerk of the sentencing court. Upon receipt of the order, the clerk shall make an entry on the record of judgment that the sentence has been satisfied.

note that when our Supreme Court denied transfer in *Meeker*, it commented in its order that:

> The court is not [inclined] to grant transfer given the "turn over" language used by the parole board in this case, which the court of appeals construed in Meeker's favor. *The result may have been otherwise if the parole board ha[d] used different language, more specifically describing the intent of its decision to "turn over" Meeker on July 21, 1998.*

(Online docket, case number 67A04–0211–CV–00532, February 23, 2004, http://hostpub.courts.state.in.us/HostPublisher/ISC3RUS/ISC2detail.jsp;jessionid=QG4EBHRHTGGTLY5W3210VEQ?row=3, reviewed June ___, 2006) (emphasis added). While the denial of transfer by our Supreme Court generally does not serve as significant additional authority in support of an argument,[4] we find the order in *Meeker* compelling because it specifically commented on the "other language" that might be used when deciding that a prisoner's sentence should be "turned over" and result in a discharge. As noted above, the Parole Board *did* use additional language that specifically described its intent when deciding to "turn over" Metcalf's sentence.

Perhaps in an effort to avoid an error that the Parole Board was ultimately found to have committed in *Meeker*, the Parole Board made it clear on its form in Metcalf's case that the life sentence was to be preserved. Hence, we can only conclude that the specific language used by the Parole Board established its intent not to discharge Metcalf from the originally-imposed life sentence.[5] Therefore, Metcalf's argument that the Parole Board's decision to "turn over" the sentence operated to discharge the life sentence as a matter of law, fails.

The judgment of the post-conviction court is reversed.

MAY, J., concurs.

SULLIVAN, J., concurs in result.

---

**4.** Indiana Appellate Rule 58(B) provides that "[t]he denial of a Petition to Transfer shall have no effect other than to terminate the litigation between the parties in the Supreme Court."

**5.** Notwithstanding such language evidencing the Parole Board's intent not to discharge Metcalf, it was suggested at oral argument that *Meeker* stands for the proposition that the Parole Board can never place an offender on parole status on the crime for which parole is revoked or that a prisoner cannot be on parole status on one offense while serving the prison term for a second consecutive sentence. To the contrary, it was determined in *Meeker* that the Parole Board "could not ef-

fectively suspend Meeker's *parole* on one set of sentences until after he served the sentences on other unrelated convictions." *Meeker*, 794 N.E.2d at 1108 (emphasis added). To be sure, in circumstances where the Parole Board relinquishes control of a prisoner by granting a "turn over" or its legal equivalent, and it is precluded from holding one sentence in abeyance until the defendant serves the sentence on another conviction, it stands to reason that the Parole Board might not be willing to take a chance on "questionable" applicants. And such a result would strip the Parole Board of an invaluable tool regarding the lengthy supervision of certain offenders.